**In the Interest of J.P.**

**Appeal of: A.P.**

Superior Court of Pennsylvania.

Argued July 30, 2003.
Filed Sept. 5, 2003.

Andrew F. Schneider, Newtown, for appellant.

Brad M. Jackman, Doylestown, for appellee.

Before: STEVENS, KLEIN, JJ., and McEWEN, P.J.E.

PER CURIAM.

¶ 1 Appellant, A.P. ("father") of J.P. ("child"), minor daughter, born August 23, 1988, has taken this appeal from the order of the trial court which (1) continued father's dependency hearing pending the resolution of criminal charges brought against father for crimes of sexual abuse allegedly committed against J.P., and (2) denied him participation in mother's dependency hearing. We are constrained to vacate and remand.

¶ 2 Father has provided in his brief the following statement of the case:

On August 11, 2002, J.P., born August 23, 1988, called 911 and complained that her father, appellant, molested her on 4 occasions, starting when she was 12 years old, or June 2001. Specifically, she stated that while she was pretending to sleep on the couch her father pulled down the strap of her nightgown and took a peek at her breast. Later that summer, again while she was resting on the couch, he went down her pants, put his fingers on her vaginal flaps, held them apart and peered in. Later still that summer, he summoned her to his room, told her brother to leave, and dropped his pants, exposing his buttocks, and requested she spank him because of his misconduct, which she refused to do.

Next year another incident occurred, similar to the incident on the couch in which he touched her vagina. The final episode occurred during the summer of 2002, in her brother's room while her brother was playing a video game. She was lying on his bed when her father entered, he put his hands down her pants, tried to separate her buttocks, and then reached around to touch her vagina.

Returning to August 11th, J.P. went to live with a friend's family. On October 11, 2002, charges of aggravated indecent assault and related offenses were lodged against appellant. He agreed to move from the house, which was made a condition of bail, and he also was to have no contact with J.P.

On November 26, 2002, an intake hearing was held pursuant to CYS's [Bucks County Children and Youth Social Services Agency] petition to declare J.P. dependent, since her friend's family could no longer care for her. After discussing a number of issues, the court declared J.P. "dependent" because J.P. did not want to go home and an adjudicatory hearing was scheduled.

On December 20, 2002, that hearing was held. The nub of the allegations was that J.P. was dependent because mother was not supporting the victimization of the daughter or, restated, she did not believe daughter's allegations of sexual abuse. The relief requested was that

J.P. should not have to live with her mother.

At the outset of the hearing, appellant's motion to vacate and substitute order was heard and granted, removing the prior dependency finding and substituting that order as an order granting "shelter" instead. After that, the court then questioned counsel about the criminal allegations and *sua sponte* stated:

> In light of that [father's prohibition of contact with J.P.] I will not proceed with the dependency hearing with respect to father. It would be fruitless because even if father—if the child were not found to be dependent, the father couldn't see the child anyway, and I don't see how we could argue that the child is in need of supervision and care with respect to father. If there is no stay-away order with respect to the mother, I will proceed with the dependency hearing.

¶ 3 The following then occurred:

> Mr. Schneider [father's counsel]: You are telling me that I can't participate?
>
> The Court: You could remain in the courtroom. Your client didn't appear. [Neither mother nor J.P. appeared.] He's not even interested enough to show up.
>
> Mr. Schneider: Could I make a further record on this?
>
> The Court: No.

The hearing then proceeded without the participation of father's counsel. [The court reminded counsel twice more not to participate.] The detective who filed the charges testified that he did so. A counselor hired by CYS, Jay Deppler of Ravenhill Psychological Services, testified as to what J.P. told him about father molesting her, and why he felt the child should remain in foster care. He portrayed mother as supporting father and disbelieving daughter to feather her own nest. Besides emotional concerns for J.P. if she returned to her home, he opined that mother might attempt to subvert her testimony. He assumed that J.P.'s allegations were truthful; however, if it turned out that appellant was acquitted, J.P. was mistaken or not truthful, his evaluation would change.

A CYS caseworker testified as to mother's remarks of non-support including her believing appellant's denials. She also testified as an expert on child safety. In her opinion J.P. should remain with her friend. As far as she was concerned, it did not matter whether the allegations were true or not. Even if they were a figment of J.P.'s imagination, her opinion would not change.

The hearing concluded with CYS requesting a continuance to subpoena mother while mother's counsel wanted to subpoena J.P. Both requests were denied and each side was ordered to brief their positions.

Presently a decision is still pending. [Footnote omitted.]

Appellant filed this timely appeal from the orders barring his participation and not having a dependency hearing with respect to him.

¶ 4 Appellant in this appeal urges this Court to "declare the orders of the hearing court illegal, order the juvenile released from shelter care, and order a dependency hearing concerning the issues raised in the petition", and in support thereof presents two questions for this Court's review:

> Is collateral review warranted where at the dependency hearing concerning appellant's daughter, the hearing court *sua sponte* continued his hearing indefinitely while proceeding with mother's hearing but barring appellant's participation?
>
> Was father's right to a dependency hearing and participation in that hearing

violated by the lower court's *sua sponte* ordering his hearing postponed indefinitely and prohibiting his participation in "mother's" hearing?

¶ 5 Father's first argument addresses the issue of whether the order in question is appealable. It is clear that the order is not, on its face, a final order, since it does not contain a contemporaneous determination of dependency of the child. *See: In the Interest of C.A.M.*, 264 Pa.Super. 300, 399 A.2d 786 (1979) (dependency orders are appealable when there has been a determination of dependency and a disposition of the child has been ordered). An appeal may only be taken from a final order unless otherwise permitted by statute or rule. *Ben v. Schwartz*, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999). Father contends that although the order appealed from in this case is interlocutory, it is appealable under the collateral order doctrine. An interlocutory order is directly appealable if (1) it is separable from and collateral to the main cause of action, (2) the right involved is too important to be denied review, and (3) the questions presented are such that if review is postponed until a final judgment is rendered in the case the claimed right will be lost. Pa. R.A.P. 313(b).

¶ 6 Instantly, we find that the order denying father's right to participate in the hearing and to there challenge and present evidence is appealable as a matter of right. It is a collateral order, which is separable from the main issue—whether J.P. is dependent—and is too important as to be denied review. As long as the order is permitted to stand, appellant has been deprived of a hearing, deprived of his right to participate in the hearing with respect to mother, and deprived of a disposition regarding his daughter, who continues to remain in shelter care—now for over seven months—without a finding of dependency.

Thus, the harm claimed by appellant, namely, the delay in deciding the issue of dependency of J.P., will have irrevocably occurred. Accordingly, we turn to the merits of this appeal.

¶ 7 As for the substantive issue, father contends that the trial court erred when it *sua sponte* ordered his hearing postponed indefinitely and barred his participation in "mother's" hearing. Specifically, father argues:

> The hearing court in essence found J.P. dependent without affording appellant a hearing or an opportunity to be heard in violation of the Juvenile Act and fundamental due process.

\*      \*      \*      \*      \*      \*

Because of concerns about the separation of children from the family, [dependency] hearings must occur within a short time, 10 days after the petition is filed if the child is in shelter care. 42 Pa.C.S. § 6335(a). This 10 day time period may only be extended upon certain exceptional circumstances: the unavailability of material evidence that was diligently sought and will become available and, by clear and convincing evidence that there is a danger to the child, the community, or of [the child] absconding. 42 Pa.C.S. § 6335(a)(1),(2). If these time limits are not met, the child shall be released from shelter care unless the delay was caused by the child or her attorney. 42 Pa.C.S. § 6335(f). Failure to complete a hearing or successive hearings pursuant to the statute requires announced specific findings of the court that the delay was caused by the child. *Id.* In other words, there is a speedy hearing provision designed to minimize a disruption of family unity. Once the petition is filed, a summons is issued to the parents and other interested parties as well as the juvenile if she is

over 14 years old for their appearance at the hearing. 42 Pa.C.S. § 6335(a). The court can also order a personal appearance by the parents and the child. 42 Pa.C.S. § 6335(b).

Thus, both parents are parties to dependency hearing. *Accord In Re L.J.*, [456 Pa.Super. 685] 691 A.2d 520, 524–526 (Pa.Super.1997) (standing is conferred if person cares or controls the child or is accused of abusing the child). As parties, they are entitled to the benefits of these procedures before they may lose control of their child.

After receiving notice of the hearing, father was denied all of these rights and had no say whether he abused her, where his daughter was to live, and under whose control and care.

¶ 8 The guardian *ad litem* has filed a brief which counters that "the [trial judge's] rationale for continuing the dependency hearing [*i.e.,* the pending sexual abuse charges against father] was appropriate." The argument of appellee guardian *ad litem,* however, overlooks the deprivation of the rights of the father effected by the order, namely, that the hearing court, by placing the child in foster care without affording appellant a hearing or an opportunity to be heard in violation of the Juvenile Act. This Court has held that "[t]he purpose of the ten day hearing requirement [of 42 Pa.C.S § 6335] [i]s to prevent the continued detention of a child without a hearing to determine whether the allegations in the petition [a]re true." *In Interest of S.N.W.*, 362 Pa.Super. 295, 524 A.2d 514, 515 (1987), *citing In re Kerr,* 333 Pa.Super. 67, 481 A.2d 1225, 1227 (1984); *In re DelSignore,* 249 Pa.Super. 149, 375 A.2d 803, 807 (1977). Accordingly, we must vacate the order of the trial

court and remand for an expeditious dependency hearing.[1]

¶ 9 Order vacated. Case remanded for further proceedings pursuant to this opinion. Jurisdiction relinquished.

---

1. Tellingly, at oral argument before this Court the parties agreed that the case should be remanded for a full, new hearing.