546 A.2d 1256

**Anthony MAY, Appellant,**

**v.**

**Claudia Creo SHARON and Sharon & Sharon, P.C.**

Superior Court of Pennsylvania.

Submitted July 11, 1988.

Filed Aug. 25, 1988.

Anthony May, appellant, in propria persona.

Thomas R. Ceraso, Greensburg, for appellees.

Before TAMILIA, MONTGOMERY and HOFFMAN, JJ.

TAMILIA, Judge:

Appellant Anthony May brings this pro se appeal from an Order dated January 25, 1988 which denied his request for appointment of counsel. The facts and procedural history surrounding the appeal are as follows.

On August 8, 1985, appellant, who had been incarcerated on a criminal conviction, brought a civil action against counsel who represented him at trial, alleging she had been negligent and had committed legal malpractice in handling his case; consequently, he sought monetary damages from her. By an October 4, 1985 Order, he was permitted to proceed in his case without payment of costs or fees, and his complaint was reinstated and served on appellee-attorney. Default judgment was taken by appellant on December 3, 1985, when the attorney had failed to file an answer to the complaint. The appellee-attorney did, however, file an answer and new matter on July 20, 1987. This pleading was later stricken as untimely filed by an October 5, 1987 Order. On January 5, 1988, appellant filed a motion seeking appointment of counsel, based upon the interests of justice, and due to the extraordinary circumstances and posture of this case. The trial court then entered the Order in question which denied the request for appointment of counsel.

■ On appeal, appellant urges the court abused its discretion in refusing to appoint counsel, in light of the exceptional circumstances of this case. He argues there exists, under 42 Pa.C.S. § 2501(b), a "right to be heard" in court, and his right to have counsel appointed is relative to that section.[1]

Appellant states, "the proper presentation of evidence, the equitable realities as coupled with the lower courts [sic] obviously strained legal resources, and any prejudice to the Appellant would better be served and avoided with experienced and able counsel assisting in having this three (3) year old action properly adjudicated." Appellant's brief at p. 3. Moreover, he contends the court denied appellant due process of law by its "failure to appoint counsel to allow for the adjudication of the assessment at trial of damages." Appellant's brief at p. 4.

■ We have reviewed appellant's claims; however, we find them to be without merit. The sixth amendment of the United States Constitution guarantees the accused in all criminal prosecutions the assistance of counsel for his defense. U.S.Const. Amend. VI.[2] "The triggering event for sixth amendment rights to attach is the commencement of adversary judicial proceedings against the defendant." *Commonwealth v. Karash*, 513 Pa. 6, 12–13, 518 A.2d 537, 541 (1986); *see* cases cited therein. The sixth amendment does not afford such assistance of counsel to a plaintiff in a civil action, such as the appellant's action, where no loss of liberty is involved.

1. § 2501. **Appearance in person or by counsel**

 . . . . .

 **(b) Criminal matters.**—In all criminal prosecutions the accused has a right to be heard by himself and his counsel.
At the outset we note this section applies to criminal prosecutions, whereas the present action is a civil action sounding in tort. We will consider the claim and appeal as having been filed under section (a) Civil matters.

2. The right to counsel under the sixth amendment right to counsel is made applicable to the states under the fourteenth amendment. *See Commonwealth v. Karash*, 513 Pa. 6, 11, 518 A.2d 537, 540.

 While it is true that in some instances counsel will be appointed for a plaintiff in a civil action, generally it is a situation involving broad policy considerations implicating a state interest of a civil rights nature such as a fair housing violation, sexual or other job discrimination or where liberty interests are implicated. The state has reasonably adjusted to these necessities by providing legal agencies to fulfill due process requirements, which will assist indigent persons who are wronged, or the courts have called upon pro bono services of the bar associations absent public resources. Each class of case and in some respects each case is scrutinized to determine if the right to counsel is required under the due process provisions of federal and state constitutions. The requirements are more clearly stated and more generally applicable when a party is a defendant in certain civil actions, rather than a plaintiff. It is also clear that classification of a case as civil as opposed to criminal will not be determinative, but rather, whether the action will be perceived as ultimately depriving a person of a higher liberty interests. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile defendant in a delinquency hearing entitled to counsel). In *Commonwealth ex rel. Finken v. Roop*, 234 Pa.Super. 155, 339 A.2d 764 (1975) *cert. denied* and *appeal dismissed*, 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976) counsel was required in civil commitment hearing, and in *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480 (1982), counsel was required for an indigent defendant in a paternity proceeding. However, in *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), it was held that every indigent parent in a termination proceeding *is not* entitled to counsel. By statute in Pennsylvania, our legislature has deemed it necessary to have indigent parents represented by counsel (as well as the child) in dependency proceedings. 42 Pa.C.S. § 6337 Right to counsel. *In Interest of S.N.W.*, 362 Pa.Super. 295, 524 A.2d 514 (1987). However, in termination and custody proceedings, indigent parents are not

provided the right to counsel as it is assumed the court will act in the best interest of the child. Children, however, will be provided counsel in a custody action when it appears to the court that the child's interests are distinct from those of the other parties. Pa.R.C.P. 1915.11. The rule, however, provides that the cost may be assessed upon the parties by the court. In divorce actions, the Supreme Court has promulgated a requirement which requires the state courts to provide means of entry into the system for indigents by eliminating filing fees, court costs, process service fees and other costs related to the proceeding. *Boddie v. Connecticut Supreme Court*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). This ruling did not go so far as to require assignment of counsel. In *In Re Smiley*, 36 N.Y.2d 433, 369 N.Y.S.2d 87, 330 N.E.2d 53 (1975), where the issue presented on appeal was whether anindigent wife and husband were entitled to appointment of counsel as a matter of constitutional right, in denying the appointments, the appeals court stated that while there is a constitutional right to appointment of counsel for indigent criminal defendants, no similar constitutional or statutory provision applies to private litigation. The court listed an array of causes, including matrimonial cases, such as evictions from homes, revocation of licenses, mortgage foreclosures and repossession of important assets, which could seriously and adversely effect indigents where right to appointed counsel is equally at issue. It went on to hold that since much indigent litigation is handled by the bar, pro bono, it is a limited resource which must be judiciously engaged or it will be overwhelmed. Widespread application of such an approach would increase litigation and suggests policy and fiscal impact which the courts should not venture to decide.

In holding appellant is not entitled to appointed counsel, we look to the balancing test and the three due process factors enunciated in the case of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Measured by this standard, appellant cannot establish that he was denied due process, but it is clear the government's interests would be adversely affected by requiring representation.

It is unique to the criminal justice system that great protective forces are present, such as appeal rights and Post Conviction Relief and Habeas Corpus actions, to correct errors caused by counsel and/or the court, thereby drastically limiting the need of corrections on the civil side. These are the provisions in law and under the constitution which provide for the protection of the appellant's liberty interests. To provide right to counsel to convicted defendants to pursue civil actions, when liberty is not at stake, would lead to such a torrent of civil actions that the already overwhelmed civil side of the court would most surely go under, not to mention the added burden to the appellate process. Additionally, the strained resources of government in providing constitutionally mandated services to criminal defendants would further be diluted, placing the criminal justice system in crisis. Neither the constitution nor public policy demands the assistance requested by appellant. Such a claim is better met by the mechanisms established in civil law, for representation on a contingent fee basis. There, in electing to represent a client, the meritorious cases would be screened from the large number which were frivolous.

We accordingly do not find any error on the part of the trial court and affirm its decision.

Order affirmed.